IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| ROCK JORDAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.: 1:08-cv-89 |
| ) | |
| PRINCE WILLIAM COUNTY, VIRGINIA, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

On July 25, 2008, the parties filed cross-motions for summary judgment, specifically, Defendant Prince William County's Motion for Summary Judgment (Dkt. 22) and Plaintiff Rock Jordan's Motion for Summary Judgment (Dkt. 20). On August 7, 2008, pursuant to Fed. R. Civ P. 56(c) the Court granted Defendant's motion, denied Plaintiff's motion, and dismissed the case with an accompanying memorandum opinion to follow. The Court now sets forth the reasons for dismissal.

**I. Background.**

From May 23, 2005 to November 15, 2006, Plaintiff Rock Jordan was employed as a Child Supervisor by the Juvenile Detention Center in Prince William County, Virginia.[1] He was terminated from this position because he gave an insulin shot to a child, which was against County policy. On January 28, 2008, Mr. Jordan sued in this Court under 42 U.S.C. Section 1983, alleging that the pre- and post-termination procedure afforded to him by Prince William County (the "County") was facially inadequate and violated his Fourteenth Amendment right to

---

[1] The parties stipulated to these facts, unless otherwise noted.

due process.

## A. Prince William County's Termination Procedure.

County policy provided that an employee could be dismissed only for cause, and only after pre-termination notice and opportunity to be heard, *i.e.*, a "Loudermill hearing." *See Cleveland Board of Education v. Loudermill* 470 U.S. 532, 546 (1985). Under the County policy, only the "appointing authority," the Director of Social Services ("Director"), could make a termination decision, and only after a review by the EEO Officer, a Human Resources Director, County Attorney, and County Executive. At the pre-termination Loudermill hearing, the employee was entitled to present reasons the disciplinary action was unjustified. The appointing authority had to declare in writing whether there were reasonable grounds to believe that the allegations were true and supported the proposed disciplinary action. This decision then was reviewed by the EEO Officer, Human Resources Director, County Attorney, and County Executive.

The County also employed a four-step post-termination grievance procedure. This procedure went as follows:

Step One: The employee had to orally notify his immediate supervisor of his intention to challenge the disciplinary action, along with his reasons for the challenge and desired relief. The immediate supervisor then had to either uphold or overturn the termination. If the employee was not satisfied, he could file a formal grievance on a specific form provided by the Human Resources Director.

Step Two: The employee had to submit the grievance to the Director of Social Services. The Director then would initiate an informal hearing with the employee, which would include a

representative from management and an appropriate witness from each side. Following this informal hearing, the Director would either uphold or overturn the termination.

<u>Step Three:</u> The Human Resources Director had to facilitate a grievance hearing before the County Executive. The Human Resources Director had to arrange a mutually agreed upon time for a hearing and provide written notice to the employee, as well as inform the employee that he may have legal counsel or another representative and/or witnesses present and that he may provide testimony and exhibits in support of his position. The County Attorney could be present at this hearing in order to provide legal advice to the County Executive. Within 10 days of the conclusion of this hearing, the County Executive was required to render a written decision to the employee.

<u>Step Four:</u> If the employee was not satisfied after the third step, he could submit the grievance to an impartial Personnel Appeals Board ("Board"). A new Board was to be constituted for each grievance, comprised of three (3) members (one chosen by the employee, one chosen by the Director, and the third selected by the first two). No person who had direct involvement in the dispute giving rise to the grievance could serve on the Board. Any party could have a representative of his choice present at this hearing. The Board's sole purpose was to determine whether the employee had demonstrated, by a preponderance of the evidence, that the complained-of action was without cause or taken in violation of law, rule, regulation or other policy. The Board shall evaluate the grievance *de novo*, with the employee bearing the burden of persuasion. The parties could offer evidence and cross examine witnesses, although there were no formal rules of evidence. All evidence had to be taken in the presence of the Board and the parties, and neither party had the right to subpoena witnesses or documents.

If the Board found that the employee had performed unsatisfactorily or had committed the alleged violation, it would affirm the disciplinary action. The Board was not empowered to substitute its own judgment as to the appropriate punishment or correction. The Board would issue a final decision in writing and file that decision with the Human Resources Director, who would give copies to the employee, the Director of Social Services, and the County Executive. The decision shall summarize the grievance and the evidence, make specific findings of fact, and state in full the reasons for the decision. There would be no judicial review of the decision.

**B.   Mr. Jordan's Termination.**

On November 1, 2006, Mr. Jordan injected a juvenile detainee with insulin. Curt Harstad, the Superintendent of the Juvenile Detention Center, was notified of this incident that same day and immediately instigated an investigation into the circumstances surrounding the incident. On November 2, 2006, Mr. Jordan submitted a written statement, wherein he acknowledged that he administered the injection and asserted that he used his best judgment in assisting the detainee by administering the shot. He also stated his disagreement with management's assessment that his offense warranted termination of his employment.

Mr. Harstard sought advice from the County Attorney's Office, Jack Ledden, the Residential Services Director, Wayne Maffett, then Acting Director of Social Services, the Director of Human Resources, and the EEO Officer. All of them agreed that Mr. Jordan should be let go. On November 8, 2006, Mr. Harstad presented Mr. Jordan with a pre-termination notice. This notice outlined the facts surrounding the incident, the specific rules and regulations that Mr. Jordan allegedly violated, and specified that the proposed course of action was termination. It also described the Loudermill hearing and invited Mr. Jordan to participate in that

process. Jordan subsequently requested and received a Loudermill hearing on November 13, 2006. The County placed him on administrative leave with pay pending the outcome of the hearing.

The Director of Social Services designated Jack Ledden to conduct the hearing. During the hearing Jordan had an opportunity to present his version of the events, after which Ledden reviewed the relevant policies and regulations, studied the audiotape of the hearing, and reviewed the information presented. After consideration of these materials, Mr. Ledden concluded that there were reasonable grounds to believe that the allegations were true and that the decision to terminate was merited. Accordingly, Ledden recommended to Director Maffett that Mr. Jordan's employment be terminated. On November 15, 2006, Director Maffett issued the final termination notice.

Next, Jordan formally initiated the grievance process by apprising Mr. Harstad, his supervisor, of his intent to challenge the termination. Harstad reviewed the termination, and, on November 31, 2006, upheld the termination. Mr. Jordan then expressed his wish to pursue step two of the grievance process. On December 11, 2006, he met with Director Maffett for the second step of the grievance process. Prior to this meeting, Jordan requested that the County preserve the security tapes of the events. He brought Miguel Angulo, a former County employee, to the hearing as his witness. Director Maffett asked questions of Jordan and allowed him to present his case. Following the meeting, Director Maffett reviewed the relevant policies and regulations, considered the statements of Jordan and Angulo, watched the videotape of the alleged incident, and spoke with Harstart, Ledden and others involved with the termination decision. By letter dated December 14, 2006, Director Maffett upheld the termination decision

and explained his reasons. On December 20, 2006, Jordan signed the form to request further review of the decision, as well as notified the County that he would be represented by counsel for all further proceedings.

On January 19, 2007, after coordination between counsel, the County sent Jordan a letter notifying him of the date and time for his step three administrative hearing. This hearing was held before Melissa Peacor – the Assistant County Executive. Ms. Peacor had no previous involvement in the matter. The County's letter informed Jordan that the hearing would last two hours and that thirty minutes would be reserved for his opening case.

At the hearing on February 9, 2007, Jordan presented witnesses and exhibits, including security tape of the incident obtained from Loudoun County Department of Social Services (which was investigating the incident). At the conclusion of the first day, Ms. Peacor held the hearing open so that Jordan could retrieve a training manual from his home that he wished to present as evidence. Once Peacor received that evidence, she reconvened a second hearing on March 19, 2007, in order to allow both sides to present additional evidence. Jordan and his attorney participated in this second hearing as well. Ms. Peacor reviewed all relevant evidence and decided to uphold the termination, explaining this decision in a letter dated March 26, 2007, which included a review of the relevant policies, training manuals, Jordan's testimony and the testimony of the other witnesses.

On April 3, 2007, Jordan indicated his disagreement with Peacor's adverse decision, and informed the County that he would pursue his grievance before the Personnel Appeals Board. Pursuant to the County policy, Jordan selected a panel member, the County selected another, and those two panel members selected the third panel member who would serve as chairman. All

parties agreed to a hearing on July 31, 2007, and exchanged witness and exhibit lists through counsel prior to the hearing. The hearing lasted two days, with both sides presenting witnesses and evidence. On August 2, 2007, the Board issued its written memorandum decision upholding the termination. Two members supported the decision, and one member dissented. The decision concluded that "[t]he grievant has not proved by a preponderance of the evidence that the action complained of was without cause or done in violation of law, rule or regulation or other policy."

## II. Standard of Review.

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Clark v. Alexander*, 85 F.3d 146, 150 (4th Cir. 1996); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The court may properly deny summary judgment when there is sufficient evidence favoring the non-moving party that would allow a reasonable jury to return a verdict for that party. *See Anderson v. Liberty Libby, Inc.*, 477 U.S. 242, 255 (1986). Mere speculation by the non-moving party "cannot create a genuine issue of material fact." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985); *see also Ash v. United Parcel Serv., Inc.*, 800 F.2d 409, 411-12 (4th Cir. 1986). Entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. The Court must further grant summary judgment where the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

## III. Discussion.

Section 1983 provides that every person who, under color of law, subjects any citizen of the United States to the deprivation of any right secured by the Constitution shall be liable in a civil action. 42 U.S.C. § 1983. In order to state a claim under Section 1983, a plaintiff must have suffered some deprivation of property. Mr. Jordan claims that he was deprived of his due process property right by the County's alleged failure to afford him adequate pre- and post-termination process. Jordan concedes that he received the process afforded him by County policy. The sole issue before this Court is whether the County's pre- and post-termination procedure was constitutionally adequate.

The Supreme Court and the Fourth Circuit have explained what due process requires in the area of public employment. Prior to termination, "the tenured public employee is entitled to oral or written notice of the charges against him, and an opportunity to present his side of the story." *Loudermill* 470 U.S. at 546. The basic purpose of the "Loudermill" hearing is to allow the employer an opportunity to avoid a mistaken firing. *Crocker v. Fluvanna County (VA) Bd. of Public Welfare,* 859 F.2d 14, 17 (4th Cir. 1988). As such, "the pre-termination hearing required by *Loudermill* [is] not required to be held before an impartial decision maker." *Id.* Moreover, "[w]hen post-termination administrative procedures are afforded, [the] pre-termination procedure functions only as an initial check against mistaken decisions-essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Linton v. Frederick County Bd. of Comm'rs,* 964 F.2d 1436, 1439 (4th Cir. 1992) (internal quotation omitted). If the employee receives the Loudermill hearing and a post-termination evidentiary hearing, due process is satisfied. *See Holland v. Rimmer,* 25 F.3d 1251, 1259 (4th Cir. 1994). "[T]o require more 'would intrude to an

8

unwarranted extent on the government's interest in quickly removing an unsatisfactory employee.'" *Id.* at 546. In *Holland*, for example, the Fourth Circuit found that due process was satisfied where the county board had given the plaintiff a Loudermill hearing and a single post-termination hearing. 25 F.3d at 1259.

Here, the procedure afforded Mr. Jordan went beyond that given in *Holland*. Jordan concedes that he received a pre-termination Loudermill hearing wherein he presented his side of the story to the employer, giving the County an opportunity to correct any mistake. Nonetheless, Jordan argues that the hearing was inadequate because it was held on short notice and that he was not permitted counsel or the opportunity to confront witnesses. In fact, the County gave Jordan five days notice of the hearing, and the law does not require representation by counsel and confrontation of witnesses during a Loudermill hearing. *See Loudermill*, 470 U.S. 532; *Holland*, 25 F.3d at 1259; *Linton*, 964 F.2d at 1439; *Crocker*, 859 F.2d at 17.

Regarding post-termination procedure, the County afforded Mr. Jordan the process set forth in the County's Grievance Procedure and pursuant to Virginia Code § 15.2-1507. This four-step grievance procedure included: a review by his immediate supervisor (step one); a chance to present evidence and witnesses to his agency director, the Director of Social Services (step two); a chance to retain counsel, present evidence and witnesses, and cross-examine the County's witnesses and contest its evidence during a hearing before Assistant County Executive Peacor (step three); and the opportunity to present his case during a full administrative hearing before the impartial three-member Personnel Appeals Board, for which Jordan himself selected one of the members (step four). This Court has no doubt that two full administrative hearings before impartial decision makers, with legal representation and the right to present evidence and

cross-examine witnesses, easily satisfy the due process requirements imposed by Fourth Circuit law. *See Holland*, 25 F.3d at 1259; *see also Garraghty v. Commonwealth of Virginia*, 52 F.3d 1274, 1284 (4th Cir. 1995) (an employee should have "at least one" administrative hearing with opportunity to call witnesses and produce evidence).

Mr. Jordan argues that the County grievance procedure is unconstitutional because it imposes the burden of proof on the grievant, because it denies a grievant counsel until the third step of the process, because it provides no access to or production of witnesses and documents, and because it limits the Personnel Appeals Board in available remedies and does not allow for judicial review of the Board's decision. First, this Court is unaware of any due process requirement that the employer bear the burden of proof in post-termination proceedings, and Mr. Jordan cites no authority for that proposition. Second, Mr. Jordan was represented by counsel during *two* full administrative hearings, one before the Assistant County Executive Peacor and one before the three-member Personnel Appeals Board. Thus, even if Jordan was entitled to counsel as a matter of due process, this requirement was satisfied by these hearings. Third, due process does not require that grievants be granted the power to compel witnesses or documents for an administrative hearing. *Detweiler v. Commonwealth Dept. of Rehabilitative Servs.*, 705 F.2d 557, 560 (4th Cir. 1984) ("[p]rovision for compulsory process for witnesses is not an essential element of due process at an employee's grievance hearing"). Moreover, Mr. Jordan was able to call witnesses and introduce evidence at each of the administrative hearings. In fact, at the first hearing Ms. Peacor continued the presentation of evidence to another day so that Jordan could retrieve and present additional video evidence. Finally, Fourth Circuit law does not require judicial review of post-termination administrative decisions. *Id. at* 561. Instead, "a pre-

termination opportunity to respond, coupled with post-termination administrative procedures provides 'all the process that is due.'" *Holland*, 25 F.3d at 1259. Due process therefore is satisfied by the record here.[2]

IV. **Conclusion.**

For the foregoing reasons, on August 7, 2008, this Court granted Defendant Prince William County's motion for summary judgment, denied Plaintiff Rock Jordan's motion for summary judgment, and dismissed this case with prejudice.

ENTERED this 8th day of October, 2008.

Alexandria, Virginia

/s/
Liam O'Grady
United States District Judge

---

[2] Jordan directs the Court to a Tenth Circuit case, *Benavadiz v. City of Albuquerque*, 101 F.3d 620 (10th Cir. 1996), which dealt with cursory pre-termination procedures. In addition to not being binding authority on this Court, *Benavadiz* does not support Jordan's argument. *Benavadiz* merely observes that pre-termination procedures might be deficient in the *absence* of a Loudermill hearing that gives the employee proper notice and an opportunity to respond. *Id.* at 627. As explained above, Jordan received a Loudermill hearing in accordance with the law.

11